UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TSI AKIM MAIDU OF TAYLORSVILLE RANCHERIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; RYAN ZINKE, in his official capacity as Secretary of the Interior; MICHAEL S. BLACK, in his official capacity as Acting Assistant Secretary for Indian Affairs of the United States Department of the Interior; and DOES 1 to 100,<br><br>Defendants. | No. 2:17-cv-01156-TLN-CKD<br><br>**ORDER** |

This matter is before the Court pursuant to Defendant United States Department of the Interior, Defendant Ryan Zinke, and Defendant Michael S. Black's (collectively "Defendants") Motion to Dismiss. (ECF No. 12.) Plaintiff Tsi Akim Maidu of Taylorsville Rancheria ("Plaintiff") opposes the Motion. (ECF No. 13.) Defendants filed a Reply. (ECF No. 17.) After carefully considering the parties' briefing, and for the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss.

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff challenges Defendants' determination that it "lost status as a federally recognized Indian Tribe when the United States sold the Taylorsville Rancheria in 1966 pursuant to Congressional mandate." (ECF No. 1 at 2.) In 1958, Congress enacted the California Rancheria Act ("CRA"), which authorized the Department of the Interior to distribute forty-one rancherias' assets to "individual Indians." (ECF No. 1 ¶¶ 21–23, 27.); *see* Pub. L. 85-671, 72 Stat. 619 (Aug. 18, 1958), *as amended* Pub. L. 88-419, 78 Stat. 390 (Aug. 11, 1964). After such distribution under the CRA, the recipients would not be entitled to government services "because of their status as Indians . . . , all statutes of the United States which affect Indians because of their status as Indians [would] be inapplicable to them, and the laws of the several States [would] apply to them in the same manner as they apply to other citizens." (ECF No. 1 ¶ 23.)

Plaintiff alleges that Defendants sold the Taylorsville Rancheria to Plumas County in 1966. (ECF No. 1 ¶ 25.) In 1998, Plaintiff alleges it filed a "letter of intent to petition for acknowledgment as an Indian tribe." (ECF No. 1 ¶ 4.) Plaintiff further alleges it later "sought clarification from the Defendants about its status as a federally recognized Indian Tribe," to which the then-Assistant Secretary of Indian Affairs responded by letter in June 2015. (ECF No. 1 ¶¶ 11, 25.) In the letter, the government allegedly explained that Plaintiff's relationship with the government terminated upon the 1966 sale of the Taylorsville Rancheria. (ECF No. 1 ¶¶ 5, 25.) Plaintiff challenges Defendants' conclusion that "the sale of the Ranch corresponds with the termination of the status of the tribe." (ECF No. 1 ¶ 14.)

Plaintiff brought suit against the Department of Interior, its Secretary, and the Assistant Secretary for Indian Affairs in the Northern District of California.[1] (ECF No. 1 ¶¶ 7–9.) Plaintiff disagreed with Defendants' June 2015 letter and requested, among other things, a declaration that Plaintiff "is a federally [recognized] tribe" and that its members "are Indians whose status have not been vanquished." (ECF No. 1 at 7.) Defendants moved to dismiss for improper venue under

---

[1] The Complaint lists Sarah Jewell as the Secretary of the United States Department of Interior, and Lawrence S. Roberts as the Assistant Secretary for Indian Affairs of the United States Department of Interior. (ECF No. 1 ¶¶ 8–9.) These parties have been terminated and substituted with Ryan Zinke and Michael S. Black, respectively. (ECF No. 25; ECF No. 26.)

2

Federal Rule of Civil Procedure 12(b)(3), or in the alternative, to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or transfer the action for improper venue in the interest of justice pursuant to 28 U.S.C. § 1406(a). (ECF No. 12.) The District Court for the Northern District of California granted Defendants' motion based on improper venue and transferred the case to the Eastern District. (ECF No. 20.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

3

elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III.    ANALYSIS**

Defendants argue that (1) general jurisdiction statutes do not waive sovereign immunity; (2) although the Administrative Procedure Act ("APA") waives sovereign immunity, Plaintiff fails to state a claim under the APA; and (3) Plaintiff's claims are barred by the statute of

4

limitations. (ECF No. 12 at 12–17.) Plaintiff responds that (1) the action is not barred by the statute of limitations, and (2) the complaint sufficiently states a claim under the APA. (ECF No. 13 at 7–10.) Because the statute of limitations argument is dispositive, the Court will not address the parties' other arguments.

As a preliminary matter, the parties do not dispute that the six-year statute of limitations in 28 U.S.C. § 2401 ("section 2401") applies to Plaintiff's APA claims. (ECF No. 12 at 15; ECF No. 13 at 8); *see also Wind River Min. Corp. v. United States*, 946 F.2d 710, 713 (9th Cir. 1991) ("[S]ection 2401(a) applies to actions brought under the APA."). Under section 2401, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

Defendants argue that Plaintiff's claims stem from one common allegation: that Defendants misinterpreted the CRA to find that the sale of the Taylorsville Rancheria had the legal effect of terminating Plaintiff's status as a federally recognized tribe. (ECF No. 12 at 16.) Defendants state in response that Congress enacted the Federally Recognized Tribe List Act, which requires the Secretary of the Interior to publish annually a list of all federally recognized tribes. (ECF No. 12 at 15.) According to Defendants, Plaintiff has not been included on the list of federally recognized tribes since its initial publication in 1979. (ECF No. 12 at 16.) As such, Defendants argue that Plaintiff's claims accrued upon the 1979 publication of the list of federally recognized tribes because Plaintiff could or should have known it was not a federally recognized tribe at that point. (ECF No. 12 at 16.) Defendants alternatively argue that, at the very latest, Plaintiff's claims accrued in 1998, when Plaintiff allegedly filed a letter of intent to petition for acknowledgment as an Indian tribe. (ECF No. 17 at 5.)

Plaintiff responds that the Ninth Circuit recognizes an exception to section 2401, which allows a substantive challenge to an agency decision "later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger." *Wind River*, 946 F.2d at 715; (ECF No. 13 at 8). Plaintiff argues the *Wind River* exception applies here because Plaintiff is not challenging the sale of the Taylorsville Rancheria in 1966, but the 2015 letter from Defendants stating that the sale terminated Plaintiff's federally

5

recognized status. (ECF No. 13 at 8.) In other words, Plaintiff contends its claim accrued upon receipt of the 2015 letter because the letter represents the "adverse application" of the agency's earlier decision. (ECF No. 13 at 8.)

In *Wind River*, the Ninth Circuit addressed the Bureau of Land Management's ("BLM") establishment of 138 Wilderness Study Areas[2] ("WSAs") on federal land in California. 946 F.2d at 711. In 1979, the BLM published a decision to establish the WSAs in the Federal Register. *Id.* Wind River Mining Corporation ("Wind River"), a mining company, staked mining claims within one of those designated WSAs between 1982 and 1983, but could not proceed with ore-extraction activities because the land was located within a WSA. *Id.* In 1986 and 1987, Wind River challenged the BLM's classification of the land as a WSA and asked the BLM to declare its decision invalid. *Id.* BLM rejected Wind River's request, as did the Interior Board of Land Appeals ("IBLA") upon Wind River's appeal in 1987. *Id.* In 1989, Wind River filed a complaint asking a federal court to review the IBLA's 1987 decision. *Id.* at 712.

The Ninth Circuit considered when Wind River's cause of action first accrued to determine whether the claim was time-barred by section 2401's six-year statute of limitations. *Id.* at 714. The Court noted that Wind River asserted a substantive challenge in 1989 to BLM's initial designation of its land as a WSA, which occurred in 1979. *Id.* However, the Court allowed the substantive challenge because Wind River brought its claim within the context of the "adverse application" of the 1979 designation: BLM and IBLA's refusal of Wind River's request to declare the WSA invalid in 1987. *Id.* at 715. Notably, the Court emphasized that "no one was likely to have discovered that the BLM's 1979 designation of this particular WSA was beyond the agency's authority until someone actually took an interest in that particular piece of property, which only happened when Wind River staked its mining claims." *Id.*

There is precedent for applying the *Wind River* analysis within the context of federal recognition of an Indian tribe. In *Artichoke Joe's California Grand Casino v. Norton*, 278 F.

---

[2] Wilderness Study Areas are "'roadless areas of five thousand acres or more and roadless islands of the public lands' having certain wilderness characteristics." *Wind River Min. Corp.*, 946 F.2d at 711 (quoting 43 U.S.C. § 1782(a) (1988) (FLPMA § 603(a)). There are restrictions on land designated as a WSA, such as the prohibition of ore-extraction. *See id.* (citing 16 U.S.C. § 1133 (1988)).

6

Supp. 2d 1174, 1179 (E.D. Cal. 2003), a casino sued to enjoin the Secretary of the Interior from taking land into a trust for an Indian tribe to conduct Indian gaming. Plaintiffs challenged the Department's 1991 decision to grant federal recognition to the Lytton Rancheria of California as an Indian tribe, even though the challenge was brought in 2001, more than six years after the recognition occurred. *Id.* Applying the reasoning in *Wind River*, the district court held that plaintiffs' challenge was not time-barred, stating in relevant part: "[W]hen the Secretary made the decision to . . . grant Lytton federal recognition in 1991, plaintiffs could have had no idea that Lytton's tribal status would affect them [by leading to tribal gaming nearby]." *Id.* at 1183.

In *North County Community Alliance, Inc. v. Salazar*, 573 F.3d 738, 740 (9th Cir. 2009), a non-profit environmental organization, with members that included residents and property owners near a proposed Indian Casino site, sued the National Indian Gaming Commission ("NIGC") and others. The plaintiff claimed that in 1993, the NIGC acted outside the scope of its authority in approving the Nooksacks' (a federally recognized Indian tribe) proposed ordinance without first making a determination of whether the locations where gaming would be permitted under the proposed ordinance would be located on Indian lands. *Id.* at 743. In response, the court stated:

> [N]o one was likely to have discovered that the NIGC's approval was beyond the agency's authority until someone actually took an interest in it. The Alliance took an interest in 2006 when construction of the Casino began near some of its members' properties. The Alliance could have had no idea in 1993 that the NIGC's approval of the Nooksacks' Ordinance would affect them in 2006 by leading to construction of a casino thirty-three miles from the Nooksack reservation.

*N. Cty. Cmty. Alliance, Inc.*, 573 F.3d at 743 (citations and quotations omitted). Accordingly, the court concluded that the six-year statute of limitations in section 2401 did not bar the plaintiff's claim. *Id.*

Similarly, in *County of Amador v. U.S. Dep't. of the Interior*, 136 F. Supp. 3d 1193, 1197 (E.D. Cal. 2015), Amador County sued the United States Department of Interior in 2012 for various determinations made by the Department, including the determination that the Ione Band of Miwok was a federally recognized tribe such that its land was gaming-eligible. Applying *Wind*

*River*, the court found it could consider the validity of 1972 and 1994 determinations by the Department despite the six-year statute of limitations in section 2401 because the present suit was based on a 2012 Record of Decision, which represented the culmination and "adverse application" of those earlier agency decisions. *Id.* at 1204–06.

In sum, the courts in *Wind River*, *Artichoke Joe's*, *Alliance*, and *Amador* found that section 2401's six-year statute of limitations accrued only after the respective plaintiffs felt the adverse application of earlier agency decisions because, until then, the plaintiffs conceivably were unaware the agency decisions would affect them. *Wind River*, 946 F.2d at 715; *Artichoke Joe's California Grand Casino*, 278 F. Supp. 2d at 1183; *N. Cty. Cmty. Alliance, Inc.*, 573 F.3d at 743; *Cnty. of Amador*, 136 F. Supp. 3d at 1206. Further, the plaintiffs in each of the aforementioned cases — a mining company, a casino, an environmental group, and a county — were uninterested third parties at the time of the agencies' earlier substantive decisions.

In contrast, Plaintiff in the instant case was never an uninterested third party. As the tribe itself, Plaintiff had a stake in its tribal status at the time the Taylorsville Rancheria was sold in 1966. Insofar as the loss of federal recognition is the "adverse application" of agency action, Plaintiff would have felt the effect of that loss long before it received the 2015 letter. *See Wind River*, 946 F.2d at 715 ("The grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision."). As such, the instant case is distinguishable from *Wind River* and its progeny because this case does not involve a previously uninterested third party that had "no idea" it was adversely affected by agency action until after the statute of limitations period ended. *Artichoke Joe's*, 278 F. Supp. 2d at 1183; *N. Cty. Cmty. Alliance, Inc.*, 573 F.3d at 743. Indeed, as a practical matter, allowing plaintiffs such as this one to effectively restart a statute of limitations simply by inquiring about a past agency decision would essentially eliminate section 2401's six-year statute of limitations requirement. Thus, the Court finds Plaintiff cannot invoke the *Wind River* exception in the present circumstance.

At the pleading stage, Plaintiff bears the burden to state a plausible claim, including that the claim is not time-barred by the applicable statute of limitations. *Von Saher v. Norton Simon*

8

*Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).  A claim generally accrues when a party knew or should have known an injury occurred.  *Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990) ("Actual knowledge of government action, however, is not required for a statutory period to commence.").

The thrust of Plaintiff's allegations is that it was injured by its loss of federal recognition, which can be traced back to the sale of the Taylorsville Rancheria in 1966.  (ECF No. 1 at 2.)  Yet Plaintiff did not file its complaint until 2016.  (ECF No. 1.)  Plaintiff has not sufficiently alleged that it lacked notice of its loss of federal recognition until the six years prior to filing the complaint.  In fact, Plaintiff's own allegations suggest the opposite: Plaintiff apparently had actual notice of its lost tribal status when it petitioned for federal recognition in 1998.  (ECF No. 1 ¶ 4.)  Further, by alleging Defendants "declined to restore" Plaintiff's federal recognition, Plaintiff again implies it had notice of its lost tribal status before receiving Defendants' letter in 2015.  (ECF No. 1 ¶ 5.)  For these reasons, it appears from the "face of the complaint that the limitations period has run."  *Von Saher*, 592 F.3d at 969; *see also Mishewal Wappo Tribe of Alexander Valley v. Jewell*, 84 F. Supp. 3d 930, 934–38 (concluding that an Indian tribe's 2009 claims seeking federal recognition were time-barred because the violations at issue were "fully knowable" when notice of the tribe's Rancheria termination was published in the Federal Register in 1961); *Miami Nation of Indians v. Lujan*, 832 F. Supp. 253, 255–57 (N.D. Ind. 1993) (finding an Indian tribe that lost federal recognition in 1897, filed a petition for acknowledgement in 1980, and received a final denial in 1992, could not bring a claim in 1992 challenging its termination of tribal status).

Thus, the Court finds that Plaintiff's claims as currently alleged are time-barred and should be dismissed.  However, the Court will grant leave to amend so that Plaintiff may allege further factual details regarding its lack of notice of adverse agency action, if applicable.  *See Lopez*, 203 F.3d at 1130.

///

///

///

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 12) is hereby GRANTED with leave to amend. Plaintiff is granted thirty (30) days from the date of this Order to file a First Amended Complaint. Defendants are afforded twenty-one (21) days from the date Plaintiff files an amended complaint to file an answer.

IT IS SO ORDERED.

Dated: January 2, 2019

Troy L. Nunley
United States District Judge