UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TSI AKIM MAIDU OF TAYLORSVILLE RANCHERIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendant. | No. 2:17-cv-01156-DJC-CKD<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

The parties bring cross-motions for summary judgment regarding the Department of the Interior's determination that Plaintiff cannot seek federal tribal recognition from the Department.  Instead, the Department found that Plaintiff must petition Congress directly.  Plaintiff argues that the Department erred and violated administrative law.  The Court disagrees, finding that the Department did not arbitrarily, capriciously, or otherwise unlawfully act.  Accordingly, for the reasons set forth below, the Court GRANTS the Department's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

**BACKGROUND**

The Court need not recount all background facts set forth in its prior orders. (*See* April 24, 2020 Order, ECF No. 41; July 19, 2022 Order, ECF No. 74).  Instead, the Court states the facts necessary to reach its decision, which are undisputed unless

noted otherwise.  In 1958, Congress passed the California Rancheria Termination Act ("the Act"), which terminated the federal trust relationship with 41 named Rancherias. Pub. L. No. 85-671, 72 Stat. 619 (1958).  In 1964, Congress amended the Act ("the Amendment") to allow the Department to sell any unoccupied rancheria in the State of California.  Pub. L. No. 88-419, 78 Stat. 390 (1964).  Specifically, the Amendment stated that an unoccupied rancheria "shall be sold" if it was "held by the United States for the use of Indians of California." *Id*. § 5(d).  Pursuant to the Amendment, the Department sold the Taylorsville Rancheria on November 4, 1966.  (2015 Decision, Administrative Record ("AR")-001081.)

In 1998, Plaintiff Tsi Akim Maidu of Taylorsville Rancheria submitted to Defendant United States Department of the Interior its letter of intent to petition for acknowledgment as an Indian tribe under the Part 83 process.  (2015 Decision, AR-001080.)  The Part 83 process allows the Department to recognize an Indian tribe so that a group does not have to petition Congress directly.  (*Id.*)  In 2015, the Department determined that because the Taylorsville Rancheria was terminated pursuant to congressional legislation, Plaintiff could not petition for acknowledgment under Part 83.  (*Id.*  AR-001083.)

Plaintiff brought this action, seeking review of the Department's 2015 Decision. During litigation, the Department issued its 2020 Decision, which rescinded its prior conclusion that Plaintiff was categorically prohibited from seeking Part 83 acknowledgment.   Instead, the Department found that the question of Plaintiff's eligibility "should have been assessed by the Office of Federal Acknowledgment in the first instance."  (2020 Decision, AR-001125.)  The 2020 Decision stated that "the sole effect of the partial withdrawal of the 2015 Decision is to allow [Plaintiff], or any portion of its individual membership thereof, to submit a documented petition under" Part 83.  (*Id.*)[1]

---

[1] Plaintiff appears to concede that it and the Taylorsville Rancheria (as the Tribe occupying that Rancheria was known) are one in the same, given the information it relies on in arguing that the Taylorsville Rancheria was not terminated.  (*See* Pl.'s Mot. at 18, 20.)  While not obvious to the Court, the

2

This Court previously ruled that "Plaintiff's claim as to loss of federal status is time-barred." (April 24, 2020 Order at 6.) However, the Court held that Plaintiff could proceed with its claim that the Department improperly found it was ineligible for Part 83 acknowledgment. (*Id.*) The Court reaffirmed this ruling when it held that "the Court can rule on the issue of whether the Department incorrectly found that Congress terminated the tribe when the Rancheria was sold and may ultimately set aside and remand that decision." (July 19, 2022 Order at 4.) Accordingly, the only remaining controversy is whether the Department improperly found that Plaintiff could not obtain acknowledgment under Part 83.

The parties now bring cross-motions for summary judgment regarding this controversy. (*See* Pl.'s Mot. for Summ. J., ECF No. 85; the Def.'s Mot. for Summ. J., ECF No. 87.) The matter is fully briefed and was submitted without oral argument pursuant to Local Rule 230(g). (ECF No. 86.)

**LEGAL STANDARD**

Summary judgment is appropriate when the record, read in the light most favorable to the non-moving party, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Administrative Procedure Act ("APA") provides that a "reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. A court must hold an agency's actions "unlawful and set aside agency action, findings, and conclusions" where those actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. An agency's interpretation or application of a statute is a question of law reviewed *de novo*.

---

Department has taken the position in this litigation that the 2015 Decision would still prohibit the Department from recognizing Plaintiff, as the Taylorsville Rancheria, from obtaining recognition under Part 83. (See Def.'s Mot. for Summ. J. at 8.) Therefore, there is an ongoing case or controversy for purposes of Article III over the 2015 Decision, even after its partial recission in the 2020 Decision.

*Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021). Where an agency interprets its own regulations, the court must "defer to the agency given that an agency's interpretation of its regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulations." *Anchustegui v. Department of Agriculture*, 257 F.3d 1124, 1128 (9th Cir. 2001) (cleaned up).

## DISCUSSION

The Court addresses the following issues: (1) statutory interpretation of the Act and the Amendment; (2) the Department's 2015 and 2020 Decisions; (3) whether the Department improperly provided *post hac* rationales for its decisions; and (4) whether the Department improperly failed to consider certain evidence before making its decisions.

### I. Statutory Interpretation of the Act and the Amendment

The parties dispute the intent of the Act and the Amendment. To resolve this debate, the Court analyzes the plain meaning and legislative history of these laws. *See Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 802 (9th Cir. 2017) ("[T]he plain purpose of legislation is determined in the first instance with reference to the plain language of the statute itself.") (internal quotations and citations omitted); *Garcia v. United States*, 469 U.S. 70, 76 (1984) ("[W]e have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.") (cleaned up).

The Act distributed the lands of 41 named rancherias. Pub. L. No. 85-671, 72 Stat. 619 (1958). It specified that "Indians who hold formal or informal assignments on each reservation or rancheria," with the assistance of the Secretary of the Interior, "shall prepare a plan for distributing to individual Indians the assets of the reservation or rancheria." *Id.* § 2(a). After the Secretary's approval, each plan was "submitted for the approval of the adult Indians who will participate in the distribution of the property, and if the plan is approved by a majority of such Indians . . . the plan shall be

4

carried out." *Id.* § 2(b). Once the Secretary complied with other requirements in the Act (e.g., surveying the land, constructing roads, etc.), the plan was carried out within three years, and all grantees received "an unrestricted title to the property conveyed." *Id.* §§ 2-3. The Act explained that following distribution, any Indians who received assets "shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians, all statutes of the United States which affect Indians because of their status as Indians shall be inapplicable to them, and the laws of the several States shall apply to them in the same manner as they apply to other citizens or persons within their jurisdiction." *Id.* § 10. Accordingly, the Act recognized that the law led to the "termination of the Federal trust relationship" between the federal government and the 41 named rancherias. *Id.* § 9.

Following passage of the Act, courts in this Circuit held that a rancheria's termination pursuant to the Act resulted in the termination of its federal recognition as a tribe. *See e.g., Wilton Miwok Rancheria v. Salazar*, No. C-07-02681-JF-PVT, 2010 WL 693420, at *1 (N.D. Cal. Feb. 23, 2010) ("The Rancheria Act provided for termination of formal federal recognition of forty-one named California Indian tribes, or rancherias."); *Hardwick v. United States*, No. CIV. 79-1710 SW, 1994 WL 721578, at *1 (N.D. Cal. Dec. 22, 1994) (finding that, after the land was distributed in accordance with the Act, "the distributees' status as Indians entitled to federal recognition was terminated"); *Allen v. United States*, No. C-16-4403, 2017 WL 5665664, at *1 (N.D. Cal. Nov. 27, 2017), *aff'd*, 797 F. App'x 302 (9th Cir. 2019) ("[I]n 1966 the tribe was terminated pursuant to the Rancheria Act.")

Congress then passed the Amendment, which in part added a new subsection to the original Act stating, "Any rancheria or reservation lying wholly within the State of California that is held by the United States for the use of Indians of California and that was not occupied on January 1, 1964, by Indians under a formal or informal assignment shall be sold by the Secretary of the Interior." Pub. L. No. 88-419, § 5(d), 78 Stat. 390 (1964). All prior provisions of the Act remained in effect, meaning that

5

once the Secretary sold unoccupied land, the federal trust relationship was terminated between the federal government and the tribe affiliated with the unoccupied land. There is nothing in the text of the 1964 amendments suggesting that the sale of unoccupied rancherias had any different legal effect than the sale of the rancherias and reservations mandated by the original Act.

Moreover, the Amendment's legislative history supports the notion that the intent behind it and the original Act were the same. The Senate Committee on Interior and Insular Affairs issued a report ("the Report") regarding the Amendment. In identifying the "need" for the law, the Report advocated that the Amendment "will assist in accomplishing the intent of House Concurrent Resolution 108 by enlarging the scope of the 1958 act." S. Rep. No. 88-1263, at 2 (1964). In 1953, the House and Senate passed Concurrent Resolution 108 to proclaim that "it is the policy of Congress, as rapidly as possible, to make the Indians within the territorial limits of the United States subject to the same laws and entitled to the same privileges and responsibilities as are applicable to other citizens of the United States, to end their status as wards of the United States, and to grant them all of the rights and prerogatives pertaining to American citizenship." H.R. Con. Res. 108, 83d Cong. (1953). The Concurrent Resolution furthered that "it is declared to be the sense of Congress that, at the earliest possible time, all of the Indian tribes and the individual members thereof, should be freed from Federal supervision and control and from all disabilities and limitations specially applicable to Indians." *Id*. As the Supreme Court recognized, "The passage of House Concurrent Resolution 108 on August 1, 1953, marked the beginning of the 'termination era'—a period that continued into the mid-1960's, in which the Federal Government endeavored to terminate its supervisory responsibilities for Indian tribes." *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 503 (1986). It is in this context–the termination of tribes–that the Report centered the Amendment's necessity. Indeed, the Committee believed the Amendment would permit the Bureau of Indian Affairs "to withdraw completely from

California at the earliest possible time." S. Rep. No. 88-1263, at 2 (1964).

As noted previously, courts have held that the Act "provided for termination of formal federal recognition of forty-one named California Indian tribes, or rancherias." *See Wilton Miwok Rancheria*, 2010 WL 693420, at *1. The sale of unoccupied rancherias mandated by the Amendment—including the sale of the Taylorsville Rancheria—therefore had the same legal effect of terminating the relationship between the federal government and tribes affiliated with unoccupied lands.[2]

## II.   The Department's 2015 and 2020 Decisions

Because the Court finds that Congress, in passing the Act and the Amendment, terminated federal recognition of tribes, the Department's 2015 and 2020 Decisions are not "arbitrary [or] capricious." *See Kalispel Tribe of Indians*, 999 F.3d at 688. Department regulations provide, "The Department will not acknowledge [a]n entity that is, or an entity whose members are, subject to congressional legislation terminating or forbidding the government-to-government relationship." 25 C.F.R. § 83.4. The Department interpreted this regulation to include tribes who were targeted by the Act and the Amendment. Based on the Court's statutory interpretation, the Court holds that the Department's interpretation is not "plainly erroneous." *See Anchustegui*, 257 F.3d at 1128.

Plaintiff argues that the 2015 Decision is wrong because it did not account for the Taylorsville Rancheria being unoccupied. (*See* Pl.'s Mot. at 14.) Plaintiff states, "If Congress is mandating termination when unoccupied land, unconnected to a tribal polity, is sold, one would expect Congress to use unmistakable or express language mandating the termination." (*See* Pl.'s Opp'n at 8, ECF No. 88.) But this argument ignores the statutory history and caselaw showing that Congress intended to

---

[2] Plaintiff asks the Court to apply an "Indian canon of construction." (*See* Pl's Mot. at 13–14.) "In Indian law there is a canon that, where a statute is not clear, it must be interpreted liberally in favor of Indians." *Rancheria v. Jewell*, 776 F.3d 706, 712 (9th Cir. 2015). However, the Act and Amendment are clear, and regardless, the Ninth Circuit "has repeatedly 'declined to apply [the Indian law canon of construction] in light of competing deference given to an agency charged with the statute's administration.'" *Id.* at 713.

7

terminate tribes by selling rancherias. There is no evidence that Congress sought to maintain the government's relationship with tribes affiliated with the unoccupied rancherias. On the contrary, Congress passed the Amendment because it wanted to terminate unoccupied rancherias to further its goal—outlined in House Concurrent Resolution 108—of ending federal supervision and facilitating the assimilation of indigenous peoples into society. In light of Congress's express intent, Plaintiff's argument fails.

Moreover, Plaintiff mischaracterizes the 2020 Decision as an "unexplained departure" from the 2015 Decision. (*See* Pl.'s Mot. at 14.) The 2020 Decision merely allowed Plaintiff to seek Part 83 acknowledgment so that the Office of Federal Acknowledgment can determine if Plaintiff is "[a]n entity that is, or an entity whose members are, subject to congressional legislation terminating or forbidding the government-to-government relationship." (*See* 25 C.F.R. § 83.4; 2020 Decision, AR-001125.) As the Department explains, this decision "accounted for the possibility that a future Part 83 petitioner was a separate tribe from the Taylorsville Rancheria" and could obtain acknowledgment. (*See* the Department's Reply at 5, ECF No. 89.)

As such, the Court holds that the Department did not violate the APA in issuing the 2015 and 2020 Decisions.

### III. Post Hac Rationale

Plaintiff argues that the Department has improperly provided *post hac* rationales for its decisions. (*See* Pl.'s Opp'n at 4.) "[T]he bar on post hoc rationalization operates to ensure that the agency's supplemental explanation is anchored to 'the grounds that the agency invoked when it took the action.'" *Biden v. Texas*, 597 U.S. 785, 810–11 (2022) (citation omitted). The Ninth Circuit held that review of the Bureau of Indian Affairs ("BIA") under the APA is "highly deferential; we decide only whether the BIA's decision was based on a clear error of judgment. We conclude that the BIA does not commit a clear error of judgment when it can state a rational connection between the facts found and the decision made." *Aguayo v. Jewell*, 827 F.3d 1213, 1227–28 (9th Cir.

2016) (internal quotations and citations omitted).

The Department supported its conclusion—that Plaintiff was terminated by an act of Congress—by analyzing the statutes and historical records. (*See* 2015 Decision, AR-001081.) The Department analyzed Section 5(d) of the Amendment, and it emphasized that the Amendment mandated the sale of unoccupied rancherias. (*Id.*) The Department cited historical records showing that the United States purchased the Taylorsville Rancheria for "homeless Indians of California." (*Id.* AR-001080.) It also cited internal documents from 1966 showing that the Taylorsville Rancheria was unoccupied on January 1, 1964. (*Id.* AR-001082.) The Department then relied on a deed of sale and internal records to determine that it sold the Taylorsville Rancheria pursuant to the Amendment. (*Id.* AR-001081-82.) As such, the Department concluded that descendants of Taylorsville Rancheria were "the subject of Congressional legislation terminating or forbidding the Federal relationship." (*Id.* AR-001083.)

Plaintiff fails to specify what improper grounds the Department has since provided. It vaguely asserts that "the government's statutory analysis was not offered as part of a written, reasoned decision that satisfactorily explains Federal Defendants' statutory interpretation *at the time* the Decision was made." (*See* Plaintiff's Opp'n at 3–4 (emphasis in original).) But, as explained above, the Department did analyze the Amendment as part of its 2015 decision. The Department's explanation of the statutory interpretation in its briefing is "anchored to the grounds that" it invoked in its 2015 decision. *See Biden*, 597 U.S. at 810–11 (internal quotations and citation omitted). Because the Department provided a "rational connection between the facts found and the decision made," it did not "commit a clear error of judgment." *See Aguayo*, 827 F.3d at 1227–28. Accordingly, the Department did not improperly provide a *post hac* rationale.

////

////

**IV.   Consideration of Other Evidence**

Finally, Plaintiff cites various evidence that it contends the Department should have considered before reaching its decision. (*See* Pl.'s Mot. at 16.)  But there is no obligation that the Department consider evidence that is not material.   *See M.F.A.N. v. Mayorkas*, 854 F. App'x 940, 941 (9th Cir. 2021).  For example, an advisory council's determination that the Taylorsville Rancheria sale did not terminate the tribe carries no legal significance.  (*See* Pl.'s Mot. at 16.)  Similarly, Plaintiff's Freedom of Information Act request upon the Division of Real Estate Services at the Bureau of Indian Affairs bears no relevance to the present issue.  (*See* Pl.'s Mot. at 18; Def.'s Mot. at 15.)  Nor does the fact that the government held trust monies on behalf of the "Taylorsville Band of Maidu Indians."  (*See* Pl.'s Mot. at 18.)  In fact, the Department considered this evidence and explained, "Treasury routinely has held funds for groups that are not federally recognized but that received judgments from the Indian Claims Commission."  (2015 Decision, AR-001084.)  Plaintiff points to other evidence that questions the Department's compliance with the 1964 Amendment in selling the Taylorsville Rancheria.   (*See* Pl.'s Mot. at 19–21.)   As explained above, however, Plaintiff is time-barred from challenging that agency action.

**CONCLUSION**

For the reasons set forth above, the Court holds that the Department did not violate the APA when it issued the 2015 and 2020 Decisions.  Accordingly, the Court GRANTS the Department's Motion for Summary Judgment (ECF No. 87) and DENIES Plaintiff's Motion for Summary Judgment (ECF No. 85).

The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant United States Department of the Interior and CLOSE this action.

Dated:  March 28, 2025           /s/ Daniel J. Calabretta
                                 THE HONORABLE DANIEL J. CALABRETTA
                                 UNITED STATES DISTRICT JUDGE